# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SARAH ANN WHITE, on behalf of A.M.W., a minor ) ) ) **Plaintiff,** ) ) v. ) ) CAROLYN W. COLVIN, ) Acting Commissioner of the ) Social Security Administration, ) ) **Defendant.** ) | Case No. 13-CV-510-PJC |

## OPINION AND ORDER

Sarah Ann White ("White") on behalf of her minor daughter, A.M.W. ("Claimant"), requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Claimant's application for disability benefits under the Social Security Act, 42 U.S.C. §§ 401 *et seq*. In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before a United States Magistrate Judge. Any appeal of this order will be taken directly to the Tenth Circuit Court of Appeals. White appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, the Court **AFFIRMS** the Commissioner's decision.

### Claimant's Background

At the time of the hearing before the ALJ on February 14, 2012, Claimant was two-and-a-half years old. (R. 33-34). White testified that Claimant's primary problem was asthma that had been ongoing since birth. (R. 35). White testified that, if they were at home, she treated

Claimant with a steroid nebulizer albuterol treatment three times a day. (R. 36). If they were not at home, White treated Claimant with an inhaler. *Id.* Because Claimant's allergies made her asthma flare, Claimant also took Claritin as needed. *Id.*

White said that when Claimant was playing outside at a park, she could only run and play for about five to seven minutes before Claimant would begin to wheeze or gasp for air. (R. 36-37). At that point, White would need to stop Claimant and have her use the inhaler to prevent an asthma attack. *Id.* The inhaler would stop the wheezing. (R. 37). After use of the inhaler, Claimant could run and play for about 20 or 30 minutes. *Id.* White would then have Claimant sit down and be calm. (R. 37-38). White testified that Claimant also wheezed when she got too excited or if she was distressed. (R. 38).

White testified that she had attempted to work, but the day care workers had not been able to keep Claimant's asthma controlled, and they would call White. (R. 38-39). White had decided not to work and to stay home so that she could handle Claimant's asthma medication needs. *Id.*

Claimant was seen for regular pediatric check-up appointments from birth, April 1, 2009, to a four-month check-up on August 3, 2009, with no significant problems. (R. 223-43).

At a routine appointment on November 10, 2009 at seven months of age, Claimant had mild respiratory distress with bilateral wheezing. (R. 211-18). She was given an in-office nebulizer treatment, which resolved the wheezing. (R. 217). A prescription was given for treatments at home every 4-to-6 hours for one week. (R. 215). White was instructed to monitor Claimant's wheezing. (R. 218).

No mention of wheezing or breathing treatments was made at Claimant's one-year check-up on April 15, 2010. (R. 219-22).

At an appointment on June 1, 2010, White said that Claimant had been out of albuterol for the nebulizer for one week and had been having "lots of difficulty with wheeze and nighttime cough." (R. 204-07). On examination, Claimant had scattered mild crackles and wheeze. (R. 205). Claimant was assessed with reactive airway disease, and she was prescribed Pulmicort for use in the nebulizer twice daily and albuterol for use every 4-6 hours as needed. (R. 205-06).

On January 20, 2011, Claimant was seen for wheezing, coughing, and fever. (R. 199-200). White said that Claimant was coughing so much that she was gagging. (R. 199). White also requested allergy medication. *Id.* On examination, Claimant's lungs had mild subcostal retractions and suprasternal retractions, with bilateral wheeze. *Id.* The assessment was asthma exacerbation. *Id.* Additional medications were prescribed for Claimant, including prednisolone and loratadine, and White was instructed to give Claimant Pulmicort daily to prevent symptoms. (R. 199-200).

On April 18, 2011, White reported that Claimant's allergies had been causing cough, runny nose, and sneezing for two or three days, and she requested medication refills. (R. 198). On examination, Claimant's breathing was normal. *Id.*

On August 11, 2011, White reported that Claimant had been doing well, with an exacerbation three days earlier when an adult was sweeping the floor. (R. 197). On examination, Claimant's breathing was normal, and medications were refilled. *Id.* A "Ventolin HFA along with Aerochamber with mask" was prescribed so that the nebulizer was not required for travel away from home. (R. 197-98).

Agency nonexamining consultant Charles Delhotal, M.D., completed a Childhood Disability Evaluation Form on February 28, 2011, concluding that there was insufficient evidence. (R. 191-96). For the domain of health and physical well-being, Dr. Delhotal wrote

that the November 10, 2009 office visit indicated bilateral wheezing with prescription of home breathing treatments. (R. 194). He stated that additional information was needed to evaluate Claimant's condition. *Id.* He additionally stated that White had missed two scheduled consultative examinations and had failed to respond to a total of four letters mailed by postal mail and a total of five phone call messages. *Id.* He stated that there was still insufficient information, and Claimant's application was denied "due to missed exams." *Id.*

## Procedural History

On November 12, 2009, White filed for supplemental security income benefits under Title XVI, 42 U.S.C. § 1381 *et seq.*, on behalf of Claimant. (R. 120-22). Claimant's application for benefits was denied in its entirety initially and on reconsideration. (R. 61-64, 73-75). A hearing before ALJ Richard J. Kallsnick was held February 14, 2012, in Tulsa, Oklahoma. (R. 29-41). By decision dated March 13, 2012, the ALJ found that Claimant was not disabled at any time since the date the application was filed. (R. 20-25). On June 14, 2013, the Appeals Council denied review of the ALJ's findings. (R. 1-6). Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. § 416.1481.

## Social Security Law and Standard of Review

A child under eighteen years of age is "disabled" for the purposes of determining benefits if he has "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I). A three-step sequential process guides the Commissioner's determination of whether a child meets the disability criteria. 20 C.F.R. § 416.924(a). The ALJ must determine (1) whether the child is engaged in "substantial gainful activity"; (2) whether the child's

4

impairment or combination of impairments is severe; and, (3) if severe, whether the child's impairment "meets, medically equals, or functionally equals the listings" set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 416.924(a).

The third step requires an initial determination of whether the impairment meets the requirements of a listing by satisfying "all of the criteria of that listing, including any relevant criteria in the introduction."[1] 20 C.F.R. § 416.925(c)(3). Next, if the child's impairment fails to meet the criteria, there must be a determination of whether it "medically equal[s] the criteria of a listing." 20 C.F.R. § 416.925(c)(5). An impairment is the medical equivalent of a listing "if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a). Medical equivalence can be found where the child has an impairment included in the listings, but "do[es] not exhibit one or more of the findings specified" for the particular listing examined, or "one or more of the findings is not as severe as specified," yet there are "other findings related to [the] impairment that are at least of equal medical significance to the required criteria." 20 C.F.R. § 416.926(b)(1)(i)-(ii). Last, if the impairment neither meets nor medically equals any listing, there must be a determination of "whether it results in limitations that functionally equal the listings." 20 C.F.R. § 416.926a(a).

For an impairment to be the functional equivalent of a listing, it must be of listing-level severity because it results in either marked[2] limitations in two domains of functioning or an

---

[1] An impairment cannot meet one of the listings merely on the basis of a diagnosis, there must be "a medically determinable impairment(s) that satisfies all of the criteria." 20 C.F.R. § 416.925(d).

[2] There is a "marked" limitation in a domain where the impairment(s) interferes seriously with the child's "ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). "It is the equivalent of the functioning [the Commissioner] would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." *Id.* The regulations further state:

5

extreme[3] limitation in one domain. 20 C.F.R. § 416.926a(a). In assessing functional limitations, the ALJ considers all relevant factors outlined in 20 C.F.R. §§ 416.924a, 416.924b, and 416.929, including (1) how well the child initiates and sustains activities, whether he needs extra help, "and the effects of structured or supportive settings"; (2) how the child functions in school; and (3) how the child is affected by medications or treatments. 20 C.F.R. § 416.926a(a)(1)-(3). The ALJ examines whether the child functions "appropriately, effectively, and independently" in six domains, *i.e.*, "broad areas of functioning intended to capture all of what a child can or cannot do," compared with the abilities of other unimpaired children the same age. 20 C.F.R. § 416.926a(b)(1). The six domains are "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being." 20 C.F.R. § 416.926a(b)(1)(i)-(vi).

---

> If you are a child of any age (birth to the attainment of age 18), we will find that you have a "marked" limitation when you have a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and your day-to-day functioning in domain-related activities is consistent with that score.

20 C.F.R. § 416.926a(e)(2)(iii).

[3] There is an "extreme" limitation in a domain where the "impairment(s) interferes *very seriously* with your ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i)(emphasis added). "Extreme" refers to the worst limitations, but "does not necessarily mean a total lack or loss of ability to function." *Id.* "Extreme" represents the equivalent of functioning shown by a valid score at least "three standard deviations or more below the mean on a comprehensive standardized test designed to measure ability or functioning in that domain, and your day-to-day functioning in domain-related activities is consistent with that score." 20 C.F.R. § 416.926a(e)(3)(iii).

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).

Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (quotations and citations omitted). Although the court will not reweigh the evidence, the court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.*

**Decision of the Administrative Law Judge**

At Step One, the ALJ found that Claimant had not engaged in substantial gainful activity since the November 12, 2009 application date. (R. 23). At Step Two, the ALJ found that Claimant's asthma was a medically determinable impairment; however, the ALJ found that it was not severe. *Id.* Therefore, the ALJ found that Claimant was not disabled since the November 12, 2009 application filing date. (R. 25).

**Review**

White asserts that the Commissioner failed to fully develop the record. Plaintiff's Opening Brief, Dkt. #15, p. 3. The Court disagrees with this assertion and therefore **AFFIRMS** the ALJ's decision.

While White attempts to frame the issue here as the ALJ's failure to develop the record, in truth the issue is whether a denial was warranted given White's failure to cooperate. White admits that she had "a duty to arrive at the scheduled examinations" but she asks for her failure to be overlooked. "[T]o completely write off a [claimant's] entire [Social Security] claim by

7

failing to arrive at only two scheduled consultative examinations is extreme." Plaintiff's Opening Brief, Dkt. #15, p. 8. White gives no authority for her claim that it is extreme to deny a claim for failure to appear at two scheduled consultative examinations.

The Social Security Administration, however, has made its position clear in its regulations.

> If you are applying for benefits and do not have a good reason for failing or refusing to take part in a consultative examination or test which we arrange for you to get information we need to determine your disability or blindness, we may find that you are not disabled or blind.

20 C.F.R § 416.918(a). The administrative file makes clear the many attempts made to contact White and her failure to respond to any of those attempts. (R. 194). In these circumstances, the Commissioner was entitled to enforce her regulations and to deny Claimant's application. *Accord, Walker v. Barnhart*, 172 Fed. Appx. 423, 427-28 (3d Cir. 2006) (unpublished); *Callins v. Apfel*, 202 F.3d 281 *3 (10th Cir. 2000) (unpublished) ("Having refused to appear for a consultative examination scheduled for his benefit, appellant cannot complain when the ALJ rejected his claim that he met a listing for lack of evidence.").

Moreover, the ALJ did not simply deny the application for White's failure to cooperate. The ALJ also found, based on the limited information available to him, that Claimant's asthma was not a severe impairment. Substantial evidence in the form of the treating medical records contained in the administrative file, cited by the ALJ, supports this finding. (R. 24-25, 219-22).

## Conclusion

The Commissioner was entitled to enforce her regulation and to deny Claimant's application based on failure to appear at consultative examinations. Moreover, the ALJ's decision that Claimant's asthma was not a severe impairment was supported by substantial evidence. Therefore, the decision of the ALJ is hereby **AFFIRMED.**

Dated this 5th day of November 2014.

Paul J. Cleary
United States Magistrate Judge